# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

| | | |
|---|---|---|
| **JEREMIAH KENNEDY** | : | Case No. |
| 415 Lincoln Avenue | : | |
| Oxford, OH  45056, | : | Judge |
| | : | |
| and | : | |
| | : | |
| | : | **COMPLAINT WITH JURY** |
| **MIGUEL ALCALDE** | : | **DEMAND ENDORSED HEREON** |
| 7073 Natamach Circle | : | |
| Cincinnati, OH  45230, | : | |
| | : | |
| and | : | |
| | : | |
| **ALEXANDER BELL** | : | |
| 3856 Delmar Avenue | : | |
| Cincinnati, OH  45211, | : | |
| | : | |
| and | : | |
| | : | |
| **SHANE BROWN** | : | |
| 325 Shadow Lake Drive | : | |
| Mason, OH  45040, | : | |
| | : | |
| and | : | |
| | : | |
| **WAYNE CARLISLE** | : | |
| 364 Rebecca Court | : | |
| Walton, KY  41094, | : | |
| | : | |
| and | : | |
| | : | |
| **KRISTINA CARLISLE** | : | |
| 51 Eagle Drive | : | |
| Elsmere, KY  41018 | : | |
| | : | |
| and | : | |
| | : | |
| **STEVE LOGAN** | : | |
| 3022 Danbury | : | |
| Florence, KY  41042 | : | |
| | : | |
| | : | |

| | |
|---|---|
| **and** | : |
| | : |
| **MARK MLYNEK** | : |
| **691 Bennettwood Court** | : |
| **Cincinnati, OH  45230,** | : |
| | : |
| **and** | : |
| | : |
| **MARY TANNER** | : |
| **4117 Jessup Road** | : |
| **Cincinnati, OH  45247,** | : |
| | : |
| **and** | : |
| | : |
| **SHANNON GERRIG** | : |
| **222 W. Johnson Street** | : |
| **Sullivan, IN  47882,** | : |
| | : |
| **and** | : |
| | : |
| **AARON HANEY** | : |
| **2819 Jupiter Drive** | : |
| **Fairfield, OH 45014** | : |
| | : |
| **and** | : |
| | : |
| **SUZANNE LAVON-JOHNSON** | : |
| **3110 Lawrence Drive** | : |
| **Edgewood, KY  41017** | : |
| | : |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| **ELITE MARKETING GROUP, INC.** | : |
| **494 8th Avenue, Suite 1400** | : |
| **New York, NY** | : |
| | : |
| **and** | : |
| | : |
| **ELITE MARKETING GROUP OF** | : |
| **ATLANTA, INC.** | : |
| **1201 Orange Street, Suite 600** | : |
| **Wilmington, DE  19899** | : |
| | : |
| | : |

2

| | |
|---|---|
| and | : |
| | : |
| **ELITE MARKETING GROUP OF CHICAGO, INC.** | : |
| 1201 Orange Street, Suite 600 | : |
| Wilmington, DE  19899 | : |
| | : |
| and | : |
| | : |
| **ELITE MARKETING GROUP WEST, INC.** | : |
| 1209 Orange Street, Suite 600 | : |
| Wilmington, DE  19899 | : |
| | : |
| and | : |
| | : |
| **ELITE MARKETING GROUP, LLC;** | : |
| c/o Nancy R. Burney, Registered Agent | : |
| 8025 Tangletree Way | : |
| Roswell, GA  30075 | : |
| | : |
| and | : |
| | : |
| **ELITE MARKETING GROUP, LLC** | : |
| c/o Wilmington Trust SP Services (Delaware), Inc., Registered Agent | : |
| 1105 N. Market Street, Suite 1300 | : |
| Wilmington, DE  19801 | : |
| | : |
| **Defendants.** | : |

Come now the Plaintiffs and for their Complaint against the Defendants state as follows:

## JURISDICTION AND VENUE

1. Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §§1331, 1337, and 29 U.S.C. §216(b).

2. Venue is appropriate in this judicial district as the Defendants conduct business within the Eastern District of Kentucky.

3

**PARTIES**

3. Plaintiffs are persons who held the position of "Tabling Representative" for Elite Marketing at the Cincinnati/Northern Kentucky International Airport ("Cincinnati Airport").

4. Jeremiah Kennedy, who resides in Oxford, Ohio, was employed as a Tabling Representative with Elite Marketing.

5. Miguel Alcalde, who resides in Cincinnati, Ohio, was employed as a Tabling Representative with Elite Marketing.

6. Alexander Bell, who resides in Cincinnati, Ohio, was employed as a Tabling Representative with Elite Marketing.

7. Shane Brown, who resides in Mason, Ohio, was employed as a Tabling Representative with Elite Marketing.

8. Wayne Carlisle, who resides in Walton, Kentucky, was employed as a Tabling Representative with Elite Marketing.

9. Kristina Carlisle, who resides in Elsmere, Kentucky, was employed as a Tabling Representative with Elite Marketing.

10. Steve Logan, who resides in Florence, Kentucky, was employed as a Tabling Representative with Elite Marketing.

11. Mark Mlynek, who resides in Cincinnati, Ohio, was employed as a Tabling Representative with Elite Marketing.

12. Mary Tanner, who resides in Cincinnati, Ohio, was employed as a Tabling Representative with Elite Marketing.

13. Shannon Gerrig, who resides in Sullivan, Indiana, was employed as a Tabling Representative with Elite Marketing.

14. Aaron Haney, who resides in Fairfield, Ohio, was employed as a Tabling Representative with Elite Marketing.

15. Suzanne LaVon-Johnson, who resides in Edgewood, Kentucky, was employed as a Tabling Representative with Elite Marketing.

16. Elite Marketing is a business enterprise operated by and through one or more of the Defendant corporate entities. They are referred to collectively in this Complaint as "Elite Marketing."

17. Defendant Elite Marketing Group, Inc. is a New York domestic business corporation which serves as the headquarters for the entire enterprise. This Defendant is located at 494 8th Avenue, Suite 1400, New York, New York. This Defendant's founder and President is Howard Horowitz, who may be served with process at 900 Third Avenue, New Hyde Park, New York 11040.

18. Defendant Elite Marketing Group of Atlanta, Inc. is a Delaware corporation with a registered agent located at Incorp Services, Inc., One Commerce Center, 1201 Orange Street, Suite 600, Wilmington, Delaware 19899. This Defendant may also be served through Elite Marketing's President, Howard Horowitz.

19. Defendant Elite Marketing Group of Chicago, Inc., is a Delaware corporation with a registered agent located at Incorp Services, Inc., One Commerce Center, 1201 Orange Street, Suite 600, Wilmington, Delaware 19899. This Defendant may also be served with process through its President, Howard Horowitz.

20. Defendant Elite Marketing Group, LLC is a Delaware limited liability company with a registered agent located at Wilmington Trust SP Services (Delaware), Inc., 1105 N.

Market Street, Suite 1300, Wilmington, Delaware 19801. This Defendant may also be served with process through its President, Howard Horowitz.

21. Defendant Elite Marketing Group, LLC is a Georgia limited liability company and may be served through its registered agent, Nancy R. Burney, 8025 Tangletree Way, Roswell, Georgia 30075.

22. Defendant Elite Marketing Group West, Inc. is a Delaware corporation with a registered agent located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. This Defendant may also be served with process through its President, Howard Horowitz.

**FACTS COMMON TO ALL COUNTS**

23. Upon information and belief, the above Defendants operated as an enterprise as that term is defined under the regulations enforcing the Fair Labor Standards Act. The enterprise employs at least two employees engaged in interstate commerce and has annual gross earnings of at least $500,000.

24. Elite Marketing is an "employer" within the meaning of FLSA §203(d) and is not exempt from any provisions under the Act.

25. Elite Marketing is an enterprise that specializes in various forms of direct consumer marketing on behalf of its clients.

26. One form of direct marketing at issue in this case is Elite Marketing's credit card acquisition campaign at U.S. airports to solicit travelers to complete credit card applications on behalf of airlines and credit card companies.

27. Elite Marketing works on behalf of American Express and Delta Air Lines to solicit airline travelers to apply for the American Express Delta SkyMiles credit card at all major Delta Air Lines hub and gateway airports, including the Hartsfield-Jackson International Airport in Atlanta, Georgia; the Cincinnati/Northern Kentucky International Airport in Cincinnati, Ohio; the Detroit Metropolitan Wayne County Airport in Detroit, Michigan; the Minneapolis-Saint Paul International Airport in Minneapolis, Minnesota; the Los Angeles International Airport in Los Angeles, California; the Chicago O'Hare International Airport in Chicago, Illinois; and the John F. Kennedy International Airport in New York, New York.

28. Elite Marketing operates similar programs with AirTran Airways at its hub airports.

29. Elite Marketing solicits travelers through a network of "Tabling Representatives," stationed at promotional kiosks located adjacent to Delta Air Lines and Airtran Airways departure and arrival gates.

30. Elite Marketing requires Tabling Representatives to wear uniforms and obtain security badges with Elite Marketing's name clearly visible. Plaintiffs' uniforms included logos for Delta Air Lines and American Express.

31. Elite Marketing established set work schedules for Tabling Representatives.

32. Elite Marketing had a morning shift, from approximately 6:15 a.m. until 1:30 p.m., and an evening shift from approximately 1:15 p.m. until 7:30 p.m.

33. Among other things, Elite Marketing's training manual outlined Plaintiffs' job duties, work rules, and selling techniques.

34. The training manual set out the following specific duties:

1. Dress both professionally and comfortably. To effectively represent the American Express & Delta brands, it is important that you project a professional image. Daily attire will consist of collared Amex/Delta logo shirt, black pants, and comfortable black shoes.

2. Arrive 15 minutes prior to your scheduled shift, be ready to work on time, and make sure to check in with your manager.

3. Set up an attractive, neat/orderly kiosk display. Properly display all signage, applications, and premiums.

4. Speak with as many Delta and Northwest travelers as possible, and attempt to persuade them to apply for the Card by describing the many benefits of Card membership – always conducting yourself in a professional and courteous manner.

5. Encourage same day application submission for the Gold Consumer or Business Card by describing the special offer they can only get through applying with you and offering American Express premium incentives. (Customers will NOT be able to take an application with them and use it to apply for the Card at a later time as they are not mailable).

6. Use the premium incentives as a promotional offer only. These items should be used as a tool to attract people to the kiosk to learn more about the Delta Consumer and Business Cards. They should only be given to those individuals who apply for the Card.

7. Be knowledgeable of each of the Delta Consumer and Business Cards, their features and benefits, as well as the key terms & conditions – You are representing American Express and Delta at these events, and should be viewed as an expert on the products.

8. Provide accurate & timely reporting of the collected applications, as well as qualitative feedback. Call in the number of applications taken (every night) to the on-site manager. Complete a daily application report for the applications you received for the day.

9. At the end of your shift, all cardboard should be broken down and placed next to the garbage and all materials should be locked back into storage.

10. You must have all of your training materials with you at all times.

35. Tabling Representatives are assigned to specific kiosk locations in the airports at which they work.

36. Elite Marketing maintained kiosks at fixed locations adjacent to airline departure and arrival gates.

37. While stationed at Elite Marketing kiosks, Tabling Representatives solicit travelers to complete credit card applications.

38. Elite Marketing provided all marketing materials for use during solicitations, including credit card applications, brochures, signage on and around the kiosks, and gift items for customers who complete applications.

39. Tabling Representatives are required to wear a uniform that consists of a collared shirt and black slacks.

40. Elite Marketing regulated the type of jewelry and shoes that can be worn during scheduled shifts, and the manner in which its shirts can be worn (i.e., shirts must be tucked in and sleeves cannot be rolled up).

41. Tabling Representatives are required to call in advance if they are going to be tardy for their shifts. Excessive tardiness subjects Tabling Representatives to punishment in the form of monetary deductions from their paychecks.

42. When Tabling Representatives are to be absent for any reason, they are required to arrange for another representative to cover their shift. Failure to do so subjects representatives to a one day suspension or monetary deductions from their pay.

43. When performing their duties, Tabling Representatives are required to follow a sales script provided by Elite Marketing. They are required to use and repeat certain words and phrases during their sales pitches.

44. Elite Marketing closely monitored Tabling Representatives' performance through the use of secret shoppers.

45. Tabling Representatives perform the following specific duties at Elite Marketing's direction: reporting for a mandatory meeting at the beginning of each shift; reporting to an assigned kiosk after the mandatory meeting; physically setting up the marketing materials at the assigned kiosk; soliciting individual travelers while standing no more than 3 feet from the assigned kiosk location; asking travelers to complete American Express Delta SkyMiles credit card applications using a script provided by Elite Marketing; breaking down material packaging such as plastic and cardboard and placing it near the garbage cans; and logging in all completed application data into the Elite Tracking Management System database.

46. Tabling Representatives who fail to follow Elite Marketing's directives are subject to discipline, including being sent home, suspended, or having monetary deductions taken from their pay.

47. Elite Marketing established daily incentive goals that allowed Tabling Representatives to earn "bonuses" upon meeting certain thresholds for completed and approved applications. These incentives were based on individual performance and the performance of all representatives on the shift.

48. Elite Marketing engaged in collective punishment of all representatives if they failed, as a group, to meet shift goals for the number of completed and approved credit card applications.

49. As set forth above, Elite Marketing controlled and supervised every aspect of Plaintiffs' work.

50. Elite Marketing retained the power to hire, fire, discipline and modify Plaintiffs' working conditions.

51. Plaintiffs' work relationship with Elite Marketing was indefinite, and continued as long as they met Elite Marketing's performance expectations. Several Plaintiffs worked as Tabling Representatives for years.

52. The work Plaintiffs performed did not require advanced skills or education.

53. Plaintiffs' work was an integral part of Elite Marketing's business.

54. Elite Marketing controlled the premises where Plaintiffs worked.

55. Tabling Representatives did not possess the authority to hire, fire, supervise or discipline other employees.

56. As set forth above, Plaintiffs performed duties normally associated with regular, full time employment.

57. Plaintiffs were employees entitled to the minimum wage and overtime provisions of the FLSA.

58. Plaintiffs were and are employees engaged in interstate commerce expressly covered by the protections of the FLSA, 29 U.S.C. §207(a).

59. Plaintiffs did not exercise any independent judgment or discretion in the performance of their regular duties.

60. At all times relevant to this action, Tabling Representatives were required to work a specific schedule and had to report to work on time.

61. Plaintiffs were not paid a salary for their work.

62. If Plaintiffs were late or failed to arrive at the start of their scheduled shift, they were not paid. Moreover, they were subject to discipline, including suspensions and reductions in their pay.

63. Plaintiffs were not paid for sick days, vacation days, or holidays.

64. Plaintiffs and all Tabling Representatives received "base" pay in the amount of $4.00 for each completed credit card application they obtained during their shift.

65. In addition, Elite Marketing paid "bonuses" to individuals and entire shifts if they were able to meet certain benchmarks that were set each day. There were benchmarks for the number of completed applications as well as the number of approved applications.

66. Tabling Representatives were subject to having their "bonuses" reduced if they failed to meet other expectations, including being tardy, failing to log in the completed applications within a certain time period after the conclusion of a shift, failing to follow the solicitation script, or for any other perceived deficiencies.

67. The bonuses paid did not constitute a bona fide commission.

68. Each day Plaintiffs worked, in addition to their regularly scheduled shift, additional hours soliciting applications and logging data into Elite Marketing's marking database.

69. Plaintiffs regularly worked in excess of 40 hours per week, and often worked between 50 to 60 hours per week.

70. Elite Marketing never paid any overtime to its Tabling Representatives, including Plaintiffs.

71. During the course of their employment, Plaintiffs were required to attend a number of mandatory meetings and training events.

72. Elite Marketing required its Tabling Representatives to attend meetings with their managers and meetings with clients.

73. Elite Marketing also required Tabling Representatives to attend training sessions and to sit for periodic testing.

74. Elite Marketing did not compensate Plaintiffs for the time they spent attending at these mandatory meetings, training and testing.

## COUNT ONE

### (Claim for Overtime; 29 U.S.C. §207)

75. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

76. The above facts support Plaintiffs' claims for relief under the FLSA.

77. Elite Marketing's failure to compensate Plaintiffs at the rate of time-and-a-half for all hours they worked in excess of 40 hours per week is a violation of §207 of the FLSA.

78. Elite Marketing's violations were in bad faith, intentional and willful.

79. Plaintiffs are entitled to have their overtime for a period of three years from the date of this action and an equal amount as liquidated damages.

## COUNT TWO

### (Minimum Wage Violations; 29 U.S.C. §206)

80. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

81. The above facts support Plaintiffs' claims for relief under the FLSA.

82. Elite Marketing's failure to compensate Plaintiffs at the minimum wage rate is a violation of §206 of the FLSA

83. Elite Marketing's violations were in bad faith, intentional and willful.

**WHEREFORE,** Plaintiffs pray that this Court award them the following relief:

(a) Award Plaintiffs payment for their overtime during the three years preceding the filing of this Complaint, calculated at one and one-half times their normal hourly rate;

(b) Award liquidated damages;

(c) Award prejudgment interest on all back wages and unpaid overtime;

(d) Issue a declaratory judgment that Tabling Representatives are and were employees as defined under the FLSA;

(e) An award of lost wages, plus interest thereon up to the time of trial;

(f) An award of all legal and equitable damages and remedies available under the law to effectuate the purposes of the FLSA, without limitation;

(g) An award of attorneys' fees and costs; and

(h) Such other and further relief this Court deems just, equitable and proper.

/s/Brian P. O'Connor
Brian P. O'Connor (Ky. Bar. #94030)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450
Facsimile: (513) 721-0109
bpo@santen-hughes.com
*Attorney for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

/s/Brian P. O'Connor
Brian P. O'Connor

459630.2